**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

QUANZHOU NEW HUNTER BAGS &
LUGGAGES (LIGHT INDUSTRY) CO.,
LTD.,

                *Plaintiff*,

        v.

SPRAY MORET, LLC,

            *Defendant*.

Hon J. Paul Oetken

No. 1:24-cv-09691


**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>MOTION TO DISMISS</u>**


PRYOR CASHMAN LLP
Brad D. Rose
Matthew S. Barkan
Jacob B. Orgel
7 Times Square
New York, New York 10036
Tel.: (212) 421-4100
*Attorneys for Defendant*


Dated: February 3, 2025

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ................................................................................................. 3

   A. The Parties ................................................................................................................ 3

   B. Hunter's Ill-Pleaded "Trade Secrets" and "Confidential Information" ................. 4

   C. Moret Hires a Former Hunter Employee
      Almost Five Years After She Left Hunter ............................................................... 5

   D. Hunter's Frustration With Moret's Decision
      To Cease Using Hunter's Services ........................................................................... 6

   E. Hunter's Unsupported Claims of "Misappropriation" ............................................ 6

ARGUMENT ........................................................................................................................ 7

   I.   PLAINTIFF FAILS TO STATE A CLAIM FOR MISAPPROPRIATION OF
       TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT (COUNT 1) ........ 8

      A. Hunter Fails to Plead the Existence of a
         Trade Secret with Sufficient Specificity ............................................................ 9

      B. Hunter Fails To Plead Any "Misappropriation" By Defendant ................................ 14

      C. Hunter Conflates Confidential Information and Trade Secrets ................................ 16

   II.  PLAINTIFF'S CLAIMS FOR MISAPPROPRIATION,
       UNFAIR COMPETITION, AND UNJUST ENRICHMENT
       UNDER NEW YORK LAW SHOULD BE DISMISSED ............................................... 17

      A. Hunter Fails to State a Claim for Misappropriation
         of Trade Secrets Under New York Law (Count 2) ............................................. 17

      B. Hunter Fails to State a Claim for Unfair
         Competition Under New York Law (Count 3) .................................................... 18

C. Hunter Fails to State a Claim for Unjust
Enrichment Under New York Law (Count 4)............................................................19

CONCLUSION....................................................................................................................................21

**TABLE OF AUTHORITIES**

**CASES**                                                                                                    **PAGE(S)**

*Aira Jewels, LLC v. Mondrian Collection, LLC*,
    No. 1:23-CV-04510 (JLR), 2024 WL 1255798 (S.D.N.Y. Mar. 25, 2024)............................17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................................2, 8, 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................................................2, 7, 8, 9

*Broker Genius, Inc. v. Zalta*,
    280 F. Supp. 3d 495 (S.D.N.Y. 2017)....................................................................................17

*Converged Compliance Sols., Inc. v. XOP Networks, Inc.*,
    No. 21-cv-5482 (PGG) (OTW), 2024 WL 4665114 (S.D.N.Y. Sept. 25, 2024)....................17

*Democratic Nat'l Comm. v. Russian Fed'n*,
    392 F. Supp. 3d 410 (S.D.N.Y. 2019)................................................................................8, 9, 13

*Elsevier Inc. v. Doctor Evidence, LLC*,
    No. 17-cv-5540 (KBF), 2018 WL 557906 (S.D.N.Y Jan. 23, 2018)............................. *passim*

*Intrepid Fin. Partners, LLC v. Fernandez*,
    No. 20-cv-9779-LTS, 2020 WL 7774478 (S.D.N.Y. Dec. 30, 2020)............................. *passim*

*Investment Sci., LLC v. Oath Holdings Inc.*,
    No. 20-civ-8159 (GBD), 2021 WL 3541152 (S.D.N.Y. Aug. 11, 2021) ...............................12

*Kairam v. W. Side GI, LLC*,
    793 F. App'x 23 (2d Cir. 2019) .................................................................................... *passim*

*Lawrence v. NYC Medical Practice, P.C.*,
    1:18-cv-8649, 2019 WL 4194576 (S.D.N.Y. 2019) ...................................................... *passim*

*Mastercraft Decorators, Inc. v. Orlando*,
    356 F. Supp. 3d 259 (S.D.N.Y. 2018)..............................................................................8, 11, 19

*Midwest Railcar Corp. v. Everest Railcar Services, Inc.*,
    16-civ-604 (AKH), 2017 WL 1383765 (S.D.N.Y. Apr. 13, 2017).........................................19

*Pauwels v. Deloitte LLP*,
    No. 19-cv-2313 (RA), 2020 WL 818742 (S.D.N.Y. Feb. 19, 2020) ..........................18, 19, 20

*PaySys Int'l, Inc. v. Altos Se*,
    No. 14-civ-10105, 2016 WL 7116132 (S.D.N.Y. Dec. 5, 2016).............................................10

*Precedo Cap. Grp. Inc. v. Twitter Inc.*,
　　33 F. Supp. 3d 245 (S.D.N.Y. 2014).................................................................12

*R.R. Donnelley & Sons Co. v. Marino*,
　　505 F. Supp. 3d 194 (W.D.N.Y. 2020)..........................................................15, 20

*TRB Acquisitions LLC v. Yedid*,
　　No. 20-cv-0552 (JMF), 2021 WL 293122 (S.D.N.Y. Jan. 28, 2021)............8, 9, 14

*Turret Labs USA, Inc. v. CargoSprint, LLC*,
　　No. 19-cv-6793 (EKR)(ML), 2021 WL 535217 (E.D.N.Y. Feb. 12, 2021)....................18, 19

*Universal Processing LLC v. Zhuang*,
　　17-cv-10210 (LTS), 2018 WL 4684115 (S.D.N.Y. Sept. 28, 2018) ................................11, 16

## **STATUTES AND RULES**

18 U.S.C. § 1839(3) ...................................................................................1, 4, 9

Fed. R. Civ. P. 12(b)(6)................................................................................1, 7

Defendant Spray Moret, LLC ("Moret," or "Defendant") submits this memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss all claims asserted against it in the Complaint (the "Complaint") (ECF No. 1) filed by Plaintiff Quanzhou New Hunter Bags & Luggages (Light Industry) Co., Ltd., ("Hunter," or "Plaintiff") for failure to state a claim upon which relief may be granted.

## PRELIMINARY STATEMENT

Hunter is a disgruntled former manufacturer of bags and luggage products for Moret. Stung by Moret's decision to cease using Hunter's services, Hunter now spins a tale that Moret allegedly misappropriated Hunter's trade secrets in order to open its own factories and "eliminate [Hunter] from the relevant market." (Compl. ¶ 33.)

Hunter's unsupported theory is that one of its employees had access to Hunter's purported "trade secrets" and "confidential information," that Moret hired her *five years* after she left Hunter's employ, and that seven months after hiring her and allegedly "inducing" her to divulge these supposed trade secrets, Moret ceased using Hunter's services. Based only on these barebones allegations, Hunter brings claims against Moret for misappropriation under the federal Defending Trade Secrets Act ("DTSA"), misappropriation of trade secrets under New York common law, unfair competition, and unjust enrichment.

Hunter's DTSA claim is fatally flawed for at least three independent reasons. *First*, Hunter fails in its pleading to identify its purported "trade secrets" with *any* specificity, much less the requisite level of specificity to satisfy the *Iqbal/Twombly* pleading standard. The Complaint fails to plead even the most basic identifying information about the purported trade secrets upon which Hunter's case relies. Hunter defines its alleged "trade secrets" using a list of general categories pulled nearly word-for-word from the DTSA statute. (*Compare* Compl. ¶ 10 *with* 18 U.S.C.

1839(3).)  Hunter's boundless definition of its trade secrets dooms its DTSA claim, as Hunter cannot "survive a motion to dismiss a trade secrets claim with conclusory statements that simply restate the elements of a trade secret.  *Twombly* and *Iqbal* require more."  *Elsevier Inc. v. Doctor Evidence, LLC*, No. 17-cv-5540 (KBF), 2018 WL 557906, at *6 (S.D.N.Y Jan. 23, 2018) (dismissing DTSA counterclaim); (*see infra*, pp. 9–10).

Hunter further fails to plead, beyond insufficient generalities, why its unspecified "trade secrets" hold independent economic value, what definitive steps it took to allegedly safeguard this information (Hunter even pleads that it permitted Moret employees to take "videos, photos and swatches" from its facility, without pleading any confidentiality agreement between Hunter and Moret (*see* Compl. ¶ 36)), or why such undefined information is difficult for others in the industry or the public to ascertain.  (*See infra*, pp. 11–14.)

*Second,* Hunter fails to plead how Moret allegedly "misappropriated" Hunter's purported trade secrets.  Hunter spends the bulk of its allegations attacking its purportedly disloyal former employee, whom Hunter declined to name as a defendant here, asserting without factual support that she improperly retained confidential information after leaving her position with Hunter and that she later used such information when employed by Moret.  Hunter then serves up conclusory allegations that Moret "induced" Hunter's former employee to divulge Hunter's unspecified trade secrets and then "misappropriated" those "trade secrets" to open its own factories and drive Hunter from the market.  The Second Circuit has held that such barebones allegations are insufficient to plead the requisite improper conduct to satisfy DTSA's "misappropriation" prong.  *See Kairam v. W. Side GI, LLC*, 793 F. App'x 23, 28 (2d Cir. 2019) (affirming dismissal of DTSA claim); (*infra*, pp. 14–16).

*Third*, Hunter improperly conflates the concept of a "trade secret" with "confidential information." Hunter ignores that trade secrets are a small subset of confidential information, and not all information that is merely "confidential" rises to the level of a protectable trade secret. In all events, Hunter defines its "confidential information" just as vaguely as it defines its purported trade secrets, and the DTSA claim must be dismissed to the extent it is predicated on information that is merely confidential. *See Intrepid Fin. Partners, LLC v. Fernandez*, No. 20-cv-9779-LTS, 2020 WL 7774478, at *4 (S.D.N.Y. Dec. 30, 2020); (*infra*, pp. 16–17).

Finally, because Hunter's DTSA claim fails, its tagalong claims for state law misappropriation, unfair competition and unjust enrichment must also be dismissed, as those claims hinge on the same conclusory allegations and suffer from the same deficiencies as Hunter's DTSA claim. (*See infra*, pp. 17–20.)

For the foregoing reasons, and as set forth further below, Hunter's Complaint should be dismissed in its entirety with prejudice.

## FACTUAL BACKGROUND

### A.    The Parties

Hunter alleges that it is a Chinese company located in Fujian, China. (*See* Compl. ¶ 2.) Hunter alleges that it is an "innovator in the design and manufacture of bag and luggage products sold throughout the world, including within the United States and within this District." (*Id*. ¶ 7.) Hunter further alleges that it has manufactured bag and luggage products sold under well-known brand names, including Defendant Moret's Sprayground brand. (*See id.*)

Defendant Moret is alleged to be a New York limited liability company with a principal place of business in Manhattan. (*See id.* ¶ 3.) Hunter alleges that Moret is the owner of the

3

Sprayground brand, under which it sells bags, luggage, and backpacks, among other products, through online channels, brick and mortar stores, and third-party retailers.  (*See id.* ¶ 22.)

    **B.**    <u>**Hunter's Ill-Pleaded "Trade Secrets" and "Confidential Information"**</u>

Hunter alleges that because the design and manufacturing industry is a "highly competitive industry," Hunter spends substantial but unidentified "time, effort and, resources" developing (1) Confidential Business Information, (2) Trade Secrets, and (3) relationships with customers, employees and third-party suppliers.  (*Id.* ¶ 10.)

Hunter fails to include any specifics in describing its "trade secrets," which it defines as "including but not limited to financial, business, technical, and engineering information, including but not limited to patterns, plans, designs, prototypes, methods, techniques, processes, and procedures relating to the design and manufacture of bag and luggage products."  (*Id.*)  Notably, this definition mirrors almost word-for-word the DTSA statute's definition of trade secret.  (*Compare* 18 U.S.C. § 1839(3) (defining "trade secret" to include "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes . . . .").)

Hunter vaguely alleges that its undefined confidential information and trade secrets are not generally known to the public or within the design and manufacturing industry and have unspecified independent economic value "because the information is not readily ascertainable by independent investigation."  (Compl. ¶ 11.)  Hunter further alleges that it maintains the secrecy of its confidential information and trade secrets by enacting procedures to limit access to such information to employees who need it, by entering into confidentiality agreements, by securing

physical and electronic storage of such information, and by marking such information as "confidential." (*Id.* ¶ 13.)

Hunter does *not* plead that it had any confidentiality agreement with Moret, but Hunter does plead that it nonetheless allowed Moret to take unspecified "videos, photos, and swatches" at Hunter's factory. (*See id.* ¶ 36.)

### C.    Moret Hires a Former Hunter Employee Almost Five Years After She Left Hunter

Hunter focuses the bulk of its allegations on its former employee, Ms. Rita Zhang ("Zhang"). Hunter alleges that it hired Zhang in 2007, and that in connection with her employment, she signed an agreement to keep Hunter's confidential information and trade secrets "confidential and secret." (*Id.* ¶ 17.) Hunter alleges that in the course of Zhang's employment with Hunter, she was given access to Hunter's (again, unspecified) confidential information and purported "trade secrets." (*Id.* ¶ 19.) Hunter further alleges that Zhang was "responsible for maintaining Plaintiff's business with Defendant, including all aspects of production, testing, and costing" and that in such capacity, Zhang "interfaced directly with Defendant." (*Id.* ¶ 21.) Hunter alleges that during such time period, Hunter manufactured "approximately 50%" of Sprayground products. (*Id.* ¶ 24.)

Hunter alleges that in January 2019, Zhang left Hunter's employ, and that almost *five years later*, in November 2023, she became employed by Moret as a "Quality Production Supervisor." (*Id.* ¶¶ 25, 27.) Without any factual specificity, Hunter alleges that when Zhang left Hunter's employ, she "improperly retained Hunter Group's Confidential Business Information and Trade Secrets[.]" (*Id.* ¶ 26.) Hunter declined to name Zhang a defendant in this action.

### D.    Hunter's Frustration With Moret's Decision
####        To Cease Using Hunter's Services

Without providing any time period, Hunter alleges that it used its unspecified confidential information and trade secrets to manufacture bag and luggage products that it sold to Moret.  (*Id.* ¶ 23.)  Hunter alleges that Moret continued to work with Hunter for seven months after Moret hired Zhang, at which point Moret "ceased its business with [Hunter]" and opened its own factories to manufacture bag and luggage products.  (*Id.* ¶¶ 33–34, 39.)

Hunter's pleading indicates frustration that Moret withdrew its business.  For example, Hunter alleges that after Moret hired Zhang, Moret "creat[ed] the impression that the parties' existing business relationship would continue."  (*Id.* ¶ 34.)  Hunter further alleges that Moret took the unspecified videos, photos, and swatches "[u]nder the guise of continuing the parties' existing business relationship."  (*Id.* ¶ 36.)  Hunter further complains that, in determining to open its own factories, "Defendant has ceased to rely on Plaintiff's services and has eliminated Plaintiff from the relevant market."  (*Id.* ¶ 33.)

### E.    Hunter's Unsupported Claims of "Misappropriation"

Hunter alleges without any supporting facts that Zhang and Moret "misappropriated" Hunter's ill-defined confidential information and trade secrets.  Hunter never says "how."  Focusing primarily on Zhang, Hunter alleges that "Zhang has misappropriated Hunter Group's Confidential Business Information and Trade Secrets by disclosing the improperly retained information to Defendant and using this information as an employee of Defendant for the benefit of Defendant and to the detriment of Plaintiff."  (*Id.* ¶ 29.)  Hunter provides no factual support for what information Zhang allegedly "improperly retained" or how she allegedly used that information for Moret's benefit.  Hunter offers only the generality that Zhang breached her duty of confidentiality by disclosing Hunter's confidential information and trade secrets to Defendant

and "us[ed] this information as an employee of Defendant for the benefit of Defendant and to the detriment of Plaintiff." (*Id*. ¶ 30.)

Turning to Moret, Hunter then alleges (again, with no factual support), that Moret "knew of Zhang's duty to protect Plaintiff's Confidential Business Information and Trade Secrets yet induced Zhang to breach her duty so that Defendant could use the information that Zhang had improperly retained." (*Id* ¶ 31.) Hunter further asserts with no specifics that Moret "misappropriated" Hunter's unspecified confidential information and trade secrets by using the information allegedly improperly retained by Zhang to benefit Moret to the detriment of Plaintiff. (*Id*. ¶ 32.) Again, Hunter never says how Moret allegedly used Hunter's information for its own benefit. Hunter surmises that Moret used Hunter's ill-defined trade secrets (including the undescribed "videos, photos, and swatches") so it could cease relying on Hunter's services and instead establish and operate its own factories. (*See id.* ¶¶ 33, 38.)

Based on these unsupported allegations, Hunter asserts four claims against Moret: (1) misappropriation of trade secrets under DTSA, (2) misappropriation of trade secrets under New York common law, (3) unfair competition, and (4) unjust enrichment. As set forth above and in greater detail below, Hunter fails to plead the existence of trade secrets or otherwise allege how Moret purportedly misappropriated such trade secrets. Accordingly, the Complaint should be dismissed with prejudice.

## ARGUMENT

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead 'enough facts to state a claim to relief that is plausible on its face' and sufficient to give the defendant 'fair notice of what the claim is and the grounds upon which it rests.'" *Intrepid Fin. Partners, LLC*, 2020 WL 7774478, at *2 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).

"To meet this plausibility standard, the factual allegations must permit the Court 'to infer more than the mere possibility of misconduct.'" *Mastercraft Decorators, Inc. v. Orlando*, 356 F. Supp. 3d 259, 264 (S.D.N.Y. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"A proper complaint cannot simply proffer legal conclusions or threadbare recitals of the elements of a cause of action; the plaintiff must plead specific facts that 'allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Intrepid Fin. Partners, LLC*, 2020 WL 7774478, at *2 (quoting *Iqbal*, 556 U.S. at 678) (cleaned up). "If the Court can infer no more than the mere possibility of misconduct from the factual averments—in other words, if the well-pled allegations of the complaint have not 'nudged plaintiff's claims across the line from conceivable to plausible'—dismissal is appropriate." *Elsevier Inc.*, 2018 WL 557906, at *2 (quoting *Twombly*, 550 U.S. at 555) (cleaned up).

With respect to claims under DTSA, "district courts in this circuit routinely require that plaintiffs plead their trade secrets with sufficient specificity to inform the defendants of what they are alleged to have misappropriated." *Lawrence v. NYC Medical Practice, P.C.*, 1:18-cv-8649 (GHW), 2019 WL 4194576, at *4 (S.D.N.Y. 2019) (internal quotation marks and citation omitted). Moreover, to survive dismissal, a plaintiff cannot rely on a pleading that "lacks any allegation about the circumstances under which" a defendant purportedly misappropriated an alleged trade secret. *Kairam*, 793 F. App'x at 28.

## I.    PLAINTIFF FAILS TO STATE A CLAIM FOR MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT (COUNT 1)

"To state a claim for trade secret misappropriation under the DTSA, 'a plaintiff must plausibly allege that (1) it possessed a trade secret, and (2) the defendant misappropriated the trade secret.'" *TRB Acquisitions LLC v. Yedid*, No. 20-cv-0552 (JMF), 2021 WL 293122, at *2 (S.D.N.Y. Jan. 28, 2021) (quoting *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d

410, 447 (S.D.N.Y. 2019)).  Here, the Complaint fails to state a DTSA misappropriation claim for

two reasons: (i) Hunter fails to plead the existence of a trade secret with sufficient specificity; and

(ii) Hunter fails to plausibly plead that Moret engaged in any improper use of Hunter's alleged

trade secrets.

### A.    Hunter Fails to Plead the Existence of a Trade Secret with Sufficient Specificity

The DTSA claim should be dismissed first and foremost because Hunter fails to identify

the purported "trade secret" that Moret allegedly "misappropriated."  Hunter defines its allegedly

protectable "trade secrets" as "including but not limited to financial, business, technical, and

engineering information, including but not limited to patterns, plans, designs, prototypes, methods,

techniques, processes, and procedures relating to the design and manufacture of bag and luggage

products[.]"  (Compl. ¶10; *see also* ¶¶ 43, 62.)  Hunter's definition of "trade secret" is fatally

flawed because it simply parrots the statutory definition in DTSA.[1]  Courts in this District dismiss

DTSA claims asserted on the basis of a purported "trade secret" that—like here—is defined to

include only the broad categories of information identified in the statute.  *See Elsevier Inc*, 2018

WL 557906, at *6 (dismissing DTSA counterclaim because plaintiff "must do more than simply

list general categories of information.  If that were not the case, then any claimant could survive a

motion to dismiss a trade secrets claim with conclusory statements that simply restate the elements

of a trade secret.  *Twombly* and *Iqbal* require more."); *TRB Acquisitions LLC*, 2021 WL 293122,

at *2 ("[Plaintiff] does not, for example, offer any particulars of how its strategies and plans

function or any other basis for the Court to discern exactly what information it alleges [Defendant]

---

[1] *See* 18 U.S.C. § 1839(3) (defining "trade secret" to include "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes . . . .").

misappropriated, let alone whether that information is protectable."); *Democratic Nat'l Comm.*, 392 F. Supp. 3d at 448 (noting that "[t]o survive a motion to dismiss, a party alleging that it owns a trade secret must put forth specific allegations as to the information owned and its value" and concluding the plaintiff's "conclusory allegations are insufficient to state that the stolen documents were trade secrets") (citation omitted).

Hunter never puts any "meat on the bones" as to what "trade secret" Moret allegedly misappropriated. Hunter simply lists general categories of information such as "financial, business, technical and engineering information[.]" (Compl. ¶10.) This is clearly insufficient as Hunter is required to identify in its pleading the specific information or documents it claims constitute a trade secret, which Moret allegedly misappropriated, so that Moret can assess whether a trade secret in fact exists, and/or establish that it did not misuse that information. *Lawrence*, 2019 WL 4194576, at *5 ("[l]isting general categories of information … does not adequately plead the existence of a trade secret") (citation omitted); *PaySys Int'l, Inc. v. Altos Se*, No. 14-civ-10105, 2016 WL 7116132, at *10 (S.D.N.Y. Dec. 5, 2016) (finding plaintiff failed to sufficiently specify the trade secrets at issue by describing them as "the Products, all Enhancements to the Products and all proprietary information, data, documentation, and derivative works related to the Products"); *Intrepid Fin. Partners*, 2020 WL 7774478, at *4 ("[G]eneral and vague references to methods, processes, interpretation, programs, and data configuration protocols do not plausibly support the existence of a trade secret without supportive facts explaining, for example, how such strategies, techniques or models function, how [Plaintiff] derives value from them, or what [Plaintiff] specifically does to ensure their secrecy.") (citation omitted).

Some courts employ a six-factor test to determine the contours of any alleged trade secret.
Those factors are:

1. the extent to which the information is known outside of the business;
2. the extent to which it is known by employees and others involved in the business;
3. the extent of measures taken by the business to guard the secrecy of the information;
4. the value of the information to the business and its competitors;
5. the amount of effort or money expended by the business in developing the information; [and]
6. the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Lawrence*, 2019 WL 4194576, at *4 (quoting *Universal Processing LLC v. Zhuang*, 17-cv-10210 (LTS), 2018 WL 4684115, at *3 (S.D.N.Y. Sept. 28, 2018)) (alterations in original). Here, too, Hunter falls well short of pleading the existence of any trade secret.

> *1.    First Factor—The Extent To Which Information is Known Outside the Business*

Hunter alleges only that its confidential information and trade secrets "are not generally known to the public or within the design and manufacturing industry" and "the information is not readily ascertainable by independent investigation." (Compl. ¶ 11.) Hunter does not plead any facts establishing what information it believes rises to the level of a protectable trade secret, and Hunter's vague allegation that its ill-defined "trade secrets" are "not generally known to the public" does not cure this deficiency. *See, e.g.*, *Mastercraft Decorators*, 356 F. Supp. 3d at 271 ("As to the first factor, the extent to which the information is known outside of the business, Mastercraft simply alleges that its information is not 'generally available' in public sources. This is insufficient.") (citation omitted).

      2.    *Second and Third Factors—The Extent To Which Information is Known Within the Business and the Extent of Measures Taken to Guard the Secrecy of the Information*

Regarding "the extent to which information is known by employees and others involved in the business" and "the extent of measures taken by the business to guard the secrecy of the information," Hunter vaguely alleges that it "takes care to safeguard and protect its Hunter Group Confidential Business Information and Trade Secrets" and has "implement[ed] policies and procedures that limit access to such information," including by "entering into confidentiality and non-compete agreements with Plaintiffs' employees," limiting distribution of the information to employees who require the information for their job functions, "restricting physical and technological access to the information[,]" "securing the physical and electronic storage of the information[,]" and "clearly and conspicuously marking the information as confidential." (Compl. ¶¶ 12–13.)

To the extent Hunter relies on its alleged confidentiality agreement with Zhang (*see id.* ¶ 17), such an agreement "does not, on its own, suggest the existence of trade secrets." *Elsevier*, 2018 WL 557906, at *6; *accord Lawrence*, 2019 WL 4194576, at *5. Moreover, Hunter concedes that it permitted representatives of Moret—with whom Hunter does not plead it had such a confidentiality agreement—to take "videos, photos, and swatches" at its facility, [2] further undercutting its claims that it safeguarded its purported trade secrets. *See Precedo Cap. Grp. Inc. v. Twitter Inc.*, 33 F. Supp. 3d 245, 252 (S.D.N.Y. 2014) (allegations in complaint that are "contradicted by more specific allegations or documentary evidence are not entitled to a

---

[2] Videos, photos, and swatches of what? Hunter's failure to specify dooms its DTSA claim. *See, e.g., Elsevier*, 2018 WL 557906, at *6 (dismissing DTSA claim where claimant "could have explained" that its interpretation or process "relies on a specific, proprietary algorithm developed at a certain time and which no one else owns" or otherwise "filed a description of the alleged trade secrets under seal").

presumption of truthfulness") (quotations marks and citation omitted); *Investment Sci., LLC v. Oath Holdings Inc.*, No. 20-civ-8159 (GBD), 2021 WL 3541152, at *5 (S.D.N.Y. Aug. 11, 2021) (dismissing DTSA claim where "the [Complaint] makes clear that [Plaintiff's principal] voluntarily disclosed the purported trade secrets to [Defendant]"); (Compl. ¶ 36).

> 3.    *Fourth and Fifth Factors—The Value of the Information to the Business and its Competitors and the Effort or Money Expended by the Business in Developing the Information*

Hunter makes two barebones allegations regarding the "value of the information to the business and its competitors." Hunter asserts that its undefined confidential information and trade secrets "have independent economic value because the information is not readily ascertainable by independent investigation and provide[s] Plaintiff with a significant competitive advantage" and "[c]ompetitors would greatly benefit from obtaining Plaintiff's Confidential Business Information and Trade Secrets." (Compl. ¶¶ 11–12.) Similarly, regarding "the amount of effort or money expended by the business in developing the information," Hunter alleges only that "Plaintiff expends substantial time, effort, and resources developing, creating, and maintaining" its trade secrets. (*Id.* ¶ 10.)

These allegations do not "identif[y] anything about the process of developing [the purported trade secrets] or show[] how their particular value derives from their secrecy[,]" as required to plead a trade secret with sufficiently specificity. *Democratic Nat'l Comm.*, 392 F. Supp. 3d at 448. Rather, they are squarely "naked assertion[s] devoid of further factual enhancement" that do not shed any light on the contours of the purported trade secret nor satisfy Hunter's pleading burden for the cause of action. *Lawrence*, 2019 WL 4194576, at *3; *accord Kairam*, 793 F. App'x at 28 (affirming dismissal of DTSA claim where claimant failed to plead

"how the template derives independent economic value from not being generally known to others[.]").

    4.    *Sixth Factor—The Ease or Difficulty With Which Information Could Be Properly Acquired or Duplicated*

Lastly, regarding the "ease or difficulty with which the information could be properly acquired or duplicated by others," the closest Hunter comes to an allegation that touches upon this factor is its conclusory assertion that "the information is not readily ascertainable by independent investigation[.]" (Compl. ¶ 11.) Where Hunter never identifies what the "information" is, Hunter does not and cannot assert that such knowledge is easy or difficult to acquire or duplicate.

**B.**    **Hunter Fails To Plead Any "Misappropriation" By Defendant**

Hunter's DTSA claim should also be dismissed for the independent reason that Hunter fails to satisfy the second element of a claim for misappropriation of trade secrets under DTSA—that "the defendant misappropriated the trade secret." *TRB Acquisitions LLC*, 2021 WL 293122, at *2 (citation omitted). Hunter does not plead how Moret allegedly acted improperly to acquire or use Hunter's purported trade secrets.

To adequately plead that a defendant misappropriated a trade secret, the Complaint must include specific facts supporting the alleged wrongdoing. *See*, *e.g.*, *Kairam*, 793 F. App'x at 28 (affirming dismissal of DTSA claim where complaint lacked any allegation about the circumstances surrounding the alleged misappropriation); *Intrepid Fin. Partners, LLC*, 2020 WL 7774478, at *4 (dismissing DTSA misappropriation claim where complaint was "entirely devoid" of factual support for the alleged misappropriation).

Here, Hunter's pleading focuses almost entirely on *Zhang*, and alleges without factual support that Zhang "improperly retained Hunter Group's Confidential Business Information and Trade Secrets after leaving her job with Plaintiff" then "disclos[ed] the improperly retained

information to Defendant and us[ed] this information as an employee of Defendant for the benefit of Defendant and to the detriment of Plaintiff." (Compl. ¶¶ 25, 29, 30.) Hunter then seeks to tie Moret to the alleged actions of Zhang by asserting (also without factual support) that Moret "induced Zhang to breach her duty[,]" "misappropriated Plaintiff's Confidential Business Information and Trade Secrets by using the information improperly retained by Zhang," and "used the misappropriated Trade Secrets to establish and operate its own factories." (Compl. ¶¶ 31–33.)

Hunter cannot plead a DTSA claim against Moret on a trail of such unsupported insinuations. First, the allegations against Zhang do not plead a DTSA claim against her, much less *Moret*. As noted above, Hunter failed to plead the existence of any trade secret. (*See supra*, Section I.A.) Moreover, Hunter's conclusory assertions that "Zhang has misappropriated Hunter Group's Confidential Business Information and Trade Secrets by disclosing the improperly retained information to Defendant . . . to the detriment of Plaintiff" (Compl. ¶ 29) fail to provide "specific factual allegations supporting [Hunter's] allegation of wrongdoing by [Zhang]." *Intrepid Fin. Partners, LLC*, 2020 WL 7774478, at *4.

As to Moret's purported improper use of Zhang's knowledge, Hunter provides no factual basis for its allegations that Moret "induced" Zhang to breach any duty not to divulge such trade secrets. *See R.R. Donnelley & Sons Co. v. Marino*, 505 F. Supp. 3d 194, 207 (W.D.N.Y. 2020) (dismissing DTSA claim and holding that even if plaintiff pleaded that a former employee misappropriated former employer's trade secrets, "[Plaintiffs] cite no case law in support of the proposition that a party can be brought into a trade secret misappropriation case simply by offering employment to an employee who has been disloyal to his or her former employer."). Nor does Hunter plead that Moret took any act constituting a "misappropriation" of any purported Hunter trade secrets, or that Moret "used" information allegedly retained by Zhang *for five years* in a

manner that could constitute misappropriation.  *Kairam*, 793 F. App'x at *28 (affirming dismissal of DTSA claim for failure to plead misappropriation where plaintiff conclusorily asserted that defendant misappropriated a confidential billing template but the complaint "lack[ed] any allegation about the circumstances under which" the billing template was purportedly misappropriated); (Compl. at ¶¶ 25–27).

### C.    Hunter Conflates Confidential Information and Trade Secrets

In addition to Hunter's failure to identify the existence of any trade secret or act of misappropriation with the requisite specificity, the DTSA claim should also be dismissed because Hunter conflates "confidential information" and "trade secrets," using those terms together throughout its Complaint.  (*See, e.g.*, *id.* ¶¶ 11–14, 17, 19–20, 23, 26, 29, 30–32, 37, 41.)  DTSA does not protect mere "confidential information," and courts are clear that "'[c]onfidential information' is not equivalent to 'trade secrets.'  For good reason, the law requires that before information or processes may be accorded trade secret status, it must be shown that it is truly trade secret—a standard far greater than the standard for confidentiality of business information." *Elsevier Inc.*, 2018 WL 557906, at *5 (dismissing DTSA claim where plaintiff used term "trade secrets … in a manner interchangeable with the general category of confidential information"); *see also Universal Processing LLC,* 2018 WL 4684115 at *3 ("[B]ecause trade secrets represent a subset of confidential information, taking steps to protect information through a confidentiality agreement alone does not suggest the existence of a trade secret.").

Here, Hunter defines "Confidential Business Information" just as vaguely as it defines its alleged "trade secrets."  (*See* Compl. ¶ 10 (defining "confidential and proprietary information" as "including but not limited to information about the Hunter Group, its employees, and its customers, operational and financial information, product information, marketing and sales strategies, and

institutional knowledge relating to the design and manufacturing industry[.]").)  Hunter's failure

to identify the "information" that rises above mere "confidential information" to the level a

protectable trade secret is another fatal flaw requiring dismissal of its DTSA claim.  *See*, *e.g.*,

*Intrepid Fin. Partners, LLC*, 2020 WL 7774478, at *4 ("The [Amended Complaint] lacks

sufficient factual information to plead plausibly the existence of trade secrets protected by the

DTSA, as opposed to the general proposition that there is a broad range of confidential information

that is valuable to [Plaintiff], that all of its employees are obliged to keep confidential, and that

would provide a commercial advantage to competitors.").

## II.   PLAINTIFF'S CLAIMS FOR MISAPPROPRIATION, UNFAIR COMPETITION, AND UNJUST ENRICHMENT UNDER NEW YORK LAW SHOULD BE DISMISSED

In addition to its federal DTSA claim, Hunter asserts claims against Moret for

misappropriation of trade secrets, unfair competition, and unjust enrichment, all under New York

common law.  (*See* Compl. ¶¶ 42–60, 61–79, 80–97.)  But as set forth below, the fatal deficiencies

in Hunter's DTSA claim require dismissal of each of these state law claims.

### A.   Hunter Fails to State a Claim for Misappropriation of Trade Secrets Under New York Law (Count 2)

"[T]he elements for a misappropriation claim under New York law are fundamentally the

same as for a DTSA claim."  *Aira Jewels, LLC v. Mondrian Collection, LLC*, No. 1:23-CV-04510

(JLR), 2024 WL 1255798, at *2 (S.D.N.Y. Mar. 25, 2024) (internal quotation marks and citations

omitted).  As with a claim under DTSA, a party asserting a New York law misappropriation claim

must demonstrate "(1) that it possessed a trade secret, and (2) that the defendants used that trade

secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by

improper means."  *Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 510 (S.D.N.Y. 2017) (internal

quotation marks and citations omitted).  Because the elements of a misappropriation claim under

New York common law mirror the elements for stating a claim under DTSA, courts in this Circuit generally apply the same analysis to claims for misappropriation of trade secrets under DTSA and New York law.  *See*, *e.g.*, *Converged Compliance Sols., Inc. v. XOP Networks, Inc.*, No. 21-cv-5482 (PGG) (OTW), 2024 WL 4665114, at *6 (S.D.N.Y. Sept. 25, 2024) (granting dismissal and observing that "the failure to adequately plead a claim under DTSA results in the same conclusion for a claim pleaded under New York law").

Here, Hunter predicates its New York law misappropriation claim on the same ill-defined "trade secrets" that Hunter alleges Zhang improperly retained and divulged to Moret, and which Hunter deficiently alleges that Moret improperly used for its own benefit.  (*See e.g.*, Compl. ¶¶ 62–72.)  Accordingly, for the same reasons that Hunter's DTSA claim fails, its claim for misappropriation under New York common law should also be dismissed.  *See*, *e.g.*, *Turret Labs USA, Inc. v. CargoSprint, LLC*, No. 19-cv-6793 (EKR)(ML), 2021 WL 535217, at *6 (E.D.N.Y. Feb. 12, 2021) (dismissing claim for misappropriation of trade secrets under New York common law "for substantially the same reasons that [Plaintiff] fails to plead a DTSA claim"), *aff'd*, No. 21-952, 2022 WL 701161 (2d Cir. Mar. 9, 2022).

**B.    Hunter Fails to State a Claim for Unfair
        Competition Under New York Law (Count 3)**

Hunter's unfair competition claim, also based on the same insufficient allegations as the missapropriation claims, fares no better.  "A claim for unfair competition based on the same allegations as a claim for misappropriation of trade secrets is treated as a single cause of action." *Turret Labs USA, Inc.*, 2021 WL 535217, at *6 (internal quotation marks and citation omitted).  "Where an unfair competition claim and a misappropriation claim arise from the same factual predicate . . . the two claims generally rise or fall together.  Accordingly, an unfair competition claim based on the same facts as an already-dismissed trade secret misappropriation claim will

also be dismissed." *Pauwels v. Deloitte LLP*, No. 19-cv-2313 (RA), 2020 WL 818742, at *10 (S.D.N.Y. Feb. 19, 2020) (cleaned up) (internal quotation marks and citations omitted).

Here, Hunter's unfair competition claim rests on the same suite of unsupported allegations as its claims for misappropriation of trade secrets: that Moret induced Zhang to misappropriate Hunter's undefined trade secrets and disclose such trade secrets to Moret, and Moret then allegedly used those trade secrets to its own benefit and to Hunter's detriment. (*See, e.g.*, Compl. ¶¶ 81–84 (vaguely describing Hunter's alleged investment in its "Confidential Business Information and Trade Secrets" and asserting that "Defendant has used the misappropriated Confidential Business Information and Trade Secrets . . . in unfair competition with Plaintiff").) Accordingly, Hunter's unfair competition claim and its misappropriation of trade secrets claims must be treated as a "single cause of action." *Turret Labs USA, Inc.*, 2021 WL 535217, at *6 (citation omitted). And because the misappropriation claim is fatally flawed and subject to dismissal, so too must Hunter's unfair competition claim be dismissed. *See, e.g.*, *Mastercraft Decorators*, 356 F. Supp. 3d at 274 ("Mastercraft's scant allegations as to the nature and secrecy of its purported trade secrets, coupled with its conclusory allegations as to how the Defendants misused the trade secrets, are insufficient to state a claim for unfair competition[.]"); *Midwest Railcar Corp. v. Everest Railcar Services, Inc.*, 16-civ-604 (AKH), 2017 WL 1383765, at *7–8 (S.D.N.Y. Apr. 13, 2017) (dismissing unfair competition claim sounding in misappropriation where plaintiff failed to allege any non-conclusory facts indicating that its pricing schedule was confidential).

### C.    Hunter Fails to State a Claim for Unjust Enrichment Under New York Law (Count 4)

Hunter also asserts a claim against Moret for unjust enrichment under New York law. The elements of a claim for unjust enrichment are: "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what

plaintiff is seeking to recover." *Pauwels*, 2020 WL 818742, at *15 (internal quotation marks and citation omitted). "Generally, a claim for unjust enrichment may be pleaded in the alternative to other claims. However, unjust enrichment is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Elsevier*, 2018 WL 557906, at *2 (internal citations and quotation marks omitted).

Here, it is indisputable that Hunter's unjust enrichment claim merely duplicates its fatally flawed trade secret misappropriation claims. (*See*, *e.g.*, Compl. ¶¶ 91–93 (describing Hunter's alleged investment in its "Confidential Business Information and Trade Secrets" and alleging that "through Defendant's unauthorized use of Plaintiff's Confidential Business Information and Trade Secrets, Defendant has been unjustly enriched with the significant competitive advantage belonging to Plaintiff").) Accordingly, Hunter's unjust enrichment claim should also be dismissed. *See*, *e.g.*, *Pauwels*, 2020 WL 818742, at *15 (dismissing unjust enrichment claim as "duplicative" because it "hinge[d] on the same facts that provide[d] the basis for the [trade-secret] misappropriation claims); *R.R. Donnelly & Sons Co.*, 505 F. Supp. 3d at 207 ("For the same reason that Plaintiffs' other claims [including misappropriation of trade secrets] against [Defendant] fail, the unjust enrichment claim against [Defendant] lacks sufficient factual detail so as to plausibly state a claim.").

## **CONCLUSION**

For the foregoing reasons, Moret respectfully requests that the Court (i) dismiss Hunter's complaint in its entirety with prejudice and (ii) grant Moret such other further relief as is deemed just and proper.

Dated: New York, New York
        February 3, 2025

                                    **PRYOR CASHMAN LLP**

                                    By: /s/ *Matthew S. Barkan*
                                            Brad D. Rose
                                            Matthew S. Barkan
                                            Jacob B. Orgel
                                    7 Times Square
                                    New York, New York 10036-6569
                                    (212) 421-4100
                                    *Attorneys for Defendant*

## <u>Certification Under S.D.N.Y. Local Civil Rule 7.1(c)</u>

I am the attorney who is filing this document. Pursuant to Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I hereby certify that this document, exclusive of the caption, table of contents, table of authorities, signature block, and word count certification, contains 5,938 words as counted by the word-processing system used to prepare the document.

Dated: New York, New York
      February 3, 2025

                                                 **PRYOR CASHMAN LLP**

                                                 By: <u>/s/ *Jacob B. Orgel*</u>
                                                    Jacob B. Orgel
                                             7 Times Square
                                           New York, New York 10036
                                           Tel. (212) 421-4100
                                           *Attorneys for Defendant*