UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| QUANZHOU NEW HUNTER BAGS & LUGGAGES (LIGHT INDUSTRY) CO., LTD.,<br><br>　　　　　　　　　Plaintiff,<br><br>　　　　　-v-<br><br>SPRAY MORET, LLC,<br><br>　　　　　　　　　Defendant. | 24-CV-9691 (JPO)<br><br>OPINION AND ORDER |

J. PAUL OETKEN, District Judge:

Plaintiff Quanzhou New Hunter Bags & Luggages (Light Industry) Co., Ltd. ("Hunter

Bags") claims that Defendant Spray Moret, LLC ("Spray Moret") misappropriated its trade

secrets in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836, *et seq.*, and

New York common law.  Hunter Bags also brings claims of unfair competition and unjust

enrichment under New York common law.  (ECF No. 14.)  Now before the Court is Spray

Moret's motion to dismiss Hunter Bags' First Amended Complaint (the "Amended Complaint").

(ECF No. 15.)  For the reasons that follow, the motion is granted.

## I.     Background

The following facts are drawn from the Amended Complaint and are assumed true for

purposes of the pending motion.  *See Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir.

2013).

Hunter Bags, established in 1997, designs and manufactures bag and luggage products

that are sold around the world under several well-known brand names.  (ECF No. 14 ("FAC")

¶ 7.)  Hunter Bags is one of the entities that composes the larger Hunter Group.  (*Id.* ¶ 9.)  Spray

1

Moret is the owner of a brand called Sprayground, under which Plaintiff has sold assorted bag products. (*Id.* ¶¶ 7, 26.)

To maintain a competitive advantage, Hunter Bags "expends substantial time, effort, and resources developing, creating, and maintaining" confidential and proprietary information, including trade secrets that encompass "financial, business, technical, and engineering information." (*Id.* ¶ 10.) Specifically, the Hunter Group's trade secrets "relate to, among other things: (1) methods, techniques, and processes to improve raw materials; (2) methods, techniques, and processes of preparing development samples and pre-production prototypes; (3) methods, techniques, and processes for conducting internal quality testing in Plaintiff's in-house laboratory; (4) procedures for evaluating factories and assembly plants; and (5) procedures for controlling the quality of mass-produced bag and luggage products." (*Id.* ¶ 11.) Plaintiff maintains the secrecy of its confidential information and trade secrets through various means, including by implementing policies and procedures that limit access to such information, entering into confidentiality and non-compete agreements with its employees, distributing such information internally on a "need-to-know" basis, and clearly labeling such information as confidential. (*Id.* ¶ 17.)

Rita Zhang joined Hunter Bags as an employee in April 2007. (*Id.* ¶ 19.) As a condition of her employment, Zhang signed a standard labor agreement indicating that she agreed to keep Hunter Bags' confidential information and trade secrets confidential and secret. (*Id.* ¶¶ 20-21.) Zhang was eventually promoted to Sales Manager of Original Equipment Manufacturer Production. (*Id.* ¶ 22.) In this role, Zhang was given access to Hunter Bags' confidential information and trade secrets, was "responsible for maintaining Plaintiff's business with Defendant," and "interfaced directly with Defendant." (*Id.* ¶¶ 23, 25.)

Around 2011, when Zhang was still overseeing Hunter Bags' business with Spray Moret, Spray Moret contracted with Hunter Product Import & Export—another member of the Hunter Group—to deliver bag and luggage products manufactured by Hunter Bags under the Sprayground brand. (*Id.* ¶ 27.) Hunter Bags used its confidential information and trade secrets to manufacture these bags for the Sprayground brand. (*Id.*) In January 2019, Zhang left her job with Hunter Bags. (*Id.* ¶ 30.) Spray Moret "engag[ed] [Zhang] for a small amount of business after she left her job with Plaintiff," and then informed Hunter Bags in November 2023 that it had hired Zhang full-time as its Quality Production Supervisor. (*Id.* ¶¶ 32-33.) Hunter Bags alleges that, in the employ of Spray Moret, Zhang "disclos[ed] [] improperly retained information to Defendant and us[ed] this information as an employee of Defendant for the benefit of Defendant and to the detriment of Plaintiff." (*Id.* ¶ 37.) After Spray Moret informed Hunter Bags that it had hired Zhang, the two companies continued to work together for seven months, during which time Hunter Bags worked on developing Spray Moret's 2024 product line. (*Id.* ¶¶ 42-43.) Sometime later, Spray Moret ended its business relationship with Hunter Bags. (*Id.* ¶ 47.)

## II.    Procedural History

Hunter Bags filed suit against Spray Moret on December 16, 2024. (ECF No. 1.) On February 3, 2025, Spray Moret filed a motion to dismiss. (ECF No. 11.) In response, Hunter Bags amended its complaint on February 24, 2025 (FAC), and Spray Moret moved to dismiss the Amended Complaint (ECF No. 15). Spray Moret filed a memorandum in support of its motion (ECF No. 16 ("Mem.")), Hunter Bags filed an opposition (ECF No. 19 ("Opp.")), and Spray Moret filed a reply (ECF No. 25 ("Reply")).

### III.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "To meet this plausibility standard, the factual allegations must permit the Court 'to infer more than the mere possibility of misconduct.'" *Mastercraft Decorators, Inc. v. Orlando*, 356 F. Supp. 3d 259, 264 (W.D.N.Y. 2018) (quoting *Iqbal*, 556 U.S. at 679). When evaluating a motion to dismiss under Rule 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quotation marks omitted). A court is "not, however, bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Id.* (quotation marks omitted).

### IV.    Discussion

#### A.    Misappropriation of Trade Secrets Under the DTSA

"To state a claim for trade secret misappropriation under the DTSA, a plaintiff must plausibly allege that (1) it possessed a trade secret, and (2) the defendant misappropriated the trade secret." *TRB Acquisitions LLC v. Yedid*, No. 20-CV-0552, 2021 WL 293122, at *2 (S.D.N.Y. Jan. 28, 2021) (quotation marks omitted). The DTSA defines a "trade secret" as "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes," so long as "the owner thereof has taken reasonable measures to keep such information secret" and "the

4

information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3). As a general matter, New York courts consider the following factors to determine whether information constitutes a trade secret:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir. 2009) (quotation marks omitted).

"[T]o survive a motion to dismiss, a party alleging that it owns a trade secret must put forth specific allegations as to the information owned and its value." *Elsevier Inc. v. Doctor Evidence, LLC*, No. 17-CV-5540, 2018 WL 557906, at *4 (S.D.N.Y. Jan. 23, 2018). While a DTSA plaintiff "has no obligation to reveal those secrets in the [c]omplaint simply to prove that they exist," *SD Prot., Inc. v. Del Rio*, 498 F. Supp. 2d 576, 586 (E.D.N.Y. 2007), "that does not mean a party can get away with nebulous descriptions at the highest level of generality," *Ad Lightning Inc. v. Clean.io, Inc.*, No. 19-CV-7367, 2020 WL 4570047, at *2 (S.D.N.Y. Aug. 7, 2020) (quotation marks omitted). Indeed, a complaint that "only claims general categories of information and data as trade secrets" does not state a claim under the DTSA because it "does not adequately put [the defendant] on sufficient notice of the contours of [the] claim for misappropriation." *Intrepid Fin. Partners, LLC v. Fernandez*, No. 20-CV-9779, 2020 WL 7774478, at *2 (S.D.N.Y. Dec. 30, 2020).

Hunter Bags describes its trade secrets in terms far too vague to state a claim.  In its Amended Complaint, Hunter Bags defines its trade secrets as "relat[ing] to, among other things: (1) methods, techniques, and processes to improve raw materials; (2) methods, techniques, and processes of preparing development samples and pre-production prototypes; (3) methods, techniques, and processes for conducting internal quality testing in Plaintiff's in-house laboratory; (4) procedures for evaluating factories and assembly plants; and (5) procedures for controlling the quality of mass-produced bag and luggage products."  (FAC ¶ 11.)  This list gestures at "methods, techniques, and processes" that touch on generic components of the manufacturing process.  It does not explain how these techniques operate, what makes them valuable, or how easily they might be acquired by others.  It does not "identif[y] anything about the process of developing [the purported trade secrets] or show[] how their particular value derives from their secrecy." *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 448 (S.D.N.Y. 2019).  Rather, Hunter Bags simply parrots the legal elements of a trade secret, alleging in conclusory terms that its trade secrets "have been developed through deliberate, systematic effort over [] nearly three decades" and are "not generally known to the public or within the design and manufacturing industry and have independent economic value because the information is not readily ascertainable by independent investigation."  (FAC ¶¶ 12-13.)  Indeed, Hunter Bags' list of trade secrets does not even purport to be complete, describing only some general categories, "among other[s]," that Hunter Group's trade secrets "relate to."  (*Id.* ¶ 11.)

Such assertions, devoid of detail, are insufficient to survive a motion to dismiss. "[G]eneral and vague references to methods, processes, interpretation, programs, and data configuration protocols do not plausibly support the existence of a trade secret without supportive facts explaining, for example, how such strategies, techniques or models function,

how [the plaintiff] derives value from them, or what [the plaintiff] specifically does to ensure their secrecy." *Intrepid Fin. Partners, LLC*, 2020 WL 7774478, at *4. Applying this standard, courts have routinely dismissed DTSA claims that described their "trade secrets" in terms as broad as those pressed here. *See, e.g., Elsevier Inc.*, 2018 WL 557906, at *5-6 (allegations of nine general categories of "trade secret information," including "clinical methods relating to executing projects and related protocols and information" and "data configuration protocols and methods," were insufficient to allege existence of a trade secret); *Intrepid Fin. Partners, LLC*, 2020 WL 7774478, at *4 (same where "trade secrets" were defined as, among other things, "client pitch information, client service and operation strategies, marketing strategies and techniques, and detailed service and investment models"); *Garvey v. Face of Beauty LLC*, 634 F. Supp. 3d 84, 95-96 (S.D.N.Y. 2022) (same where "trade secrets" were defined as, among other things, "information about running a business, advertising and promotional strategies, a customer and supplier list, and pricing information that [the former employer] had acquired").

Here, Hunter Bags' description of its "trade secrets" is similarly, and fatally, vague. Accordingly, because Hunter Bags has not sufficiently alleged that it possesses any trade secrets, as is required to mount a challenge under the DTSA, its DTSA claim is dismissed for failure to state a claim.

### B.    Hunter Bags' State Law Claims[1]

#### 1.    Unfair Competition

Hunter Bags also brings trade secret misappropriation, unfair competition, and unjust enrichment claims under New York common law. To state a claim for unfair competition, "a

---

[1] As both parties concede, the Court's dismissal of Hunter Bags' DTSA claim also disposes of its misappropriation claim under New York law. (*See* Mem. at 25-26; Opp. at 9.) "[T]he elements for a misappropriation claim under New York law are fundamentally the same as for a DTSA

plaintiff must allege that a defendant misappropriated plaintiff's labor, skills, expenditures or good will, and displayed some element of bad faith in doing so." *Zebra Strategies, Inc. v. Gonzalez-Nazario*, 764 F. Supp. 3d 144, 163 (S.D.N.Y. 2025) (quotation marks omitted). "Where an unfair competition claim and a misappropriation claim arise from the same factual predicate[,] the two claims generally rise or fall together." *Pauwels v. Deloitte LLP*, No. 19-CV-2313, 2020 WL 818742, at *10 (S.D.N.Y. Feb. 19, 2020) (cleaned up).

Hunter Bags' unfair competition claim arises from the same factual predicate as its misappropriation claim:  In support of its unfair competition claim, Hunter Bags alleges that, "[t]hrough Defendant's unauthorized use of Plaintiff's Confidential Business Information and Trade Secrets, Defendant has unfairly misappropriated the significant competitive advantage belonging to Plaintiff."  (FAC ¶ 96.)  Because the Court has dismissed Hunter Bags' misappropriation claim, its unfair competition claim must fall as well.

Hunter Bags protests that it has separately made out a claim of misappropriation of its confidential business information, which it argues is a "broader category of information" than trade secrets and thus a non-duplicative theory of recovery.  (Opp. at 20.)  But even assuming *arguendo* that Hunter Bags has sufficiently distinguished between its trade secrets and confidential business information in its pleadings, Hunter Bags has put forth only conclusory allegations that this confidential business information was misappropriated.  The sum total of Hunter Bags' allegations is that Zhang: (1) was given access to confidential business information, (2) improperly retained that information after leaving her job with Hunter Bags, and

---

claim." *Aira Jewels, LLC v. Mondrian Collection, LLC*, No. 23-CV-04510, 2024 WL 1255798, at *2 (S.D.N.Y. Mar. 25, 2024) (quotation marks and citations omitted).  As a result, "the failure to adequately plead a claim under DTSA results in the same conclusion for a claim pleaded under New York law." *Converged Compliance Sols., Inc. v. XOP Networks, Inc.*, No. 21-CV-5482, 2024 WL 4665114, at *6 (S.D.N.Y. Sept. 25, 2024).

(3) was unlawfully induced by Spray Moret to disclose that information. (FAC ¶¶ 23, 31, 37, 39.) Hunter Bags supplies no non-conclusory statements from which the Court may infer that Zhang did actually retain any confidential information, or indeed, that Spray Moret induced her to disclose it. Hunter Bags' allegations are thus insufficient to nudge its unfair competition claim "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570).

Accordingly, Hunter Bags' unfair competition claim is dismissed for failure to state a claim.

### 2. Unjust Enrichment

Finally, Hunter levies a claim against Spray Moret for unjust enrichment under New York law. "An unjust enrichment claim requires plausible allegations that '(1) [the] defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover.'" *Pauwels*, 2020 WL 818742, at *15 (quoting *Briarpatch Ltd. v. Phx. Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004)). "Generally, a claim for unjust enrichment may be pleaded in the alternative to other claims," and "is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Elsevier Inc.*, 2018 WL 557906, at *2 (quotation marks omitted).

Hunter Bags' unjust enrichment claim is duplicative of its misappropriation claim and thus must also be dismissed. (*See* FAC ¶¶ 105-06 (alleging that "Plaintiff has invested significant money and other resources into developing and protecting its Confidential Business Information and Trade Secrets," and that, "[t]hrough Defendant's unauthorized use of Plaintiff's Confidential Business Information and Trade Secrets, Defendant has been unjustly enriched with the significant competitive advantage belonging to Plaintiff").) Moreover, to the extent that Hunter Bags predicates its unjust enrichment claim on its efforts to develop Spray Moret's 2024

product line before the termination of its business relationship with Spray Moret (*see* Opp. at 21), that theory of recovery is insufficiently pleaded.[2]  Hunter Bags offers only conclusory allegations that Spray Moret in fact used Hunter Bags' work on the 2024 product line to develop its own products.  (*See* FAC ¶¶ 42-49.)  Hunter Bags fails to identify, for example, similarities between the 2024 product line and any later-sold Sprayground bags, or to furnish any non-conclusory support for its allegation that Spray Moret was unfairly enriched, as is required to sustain an unjust enrichment claim.

Accordingly, Hunter Bags' unjust enrichment claim is dismissed for failure to state a claim.

### C.      Leave to Amend

Hunter Bags requests that it be given leave to further amend its pleading in the event the Court dismisses its claims.  (Opp. at 5, 22.)  "Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

Spray Moret's first motion to dismiss alerted Hunter Bags to the deficiencies in its initial complaint, after which Hunter Bags filed its Amended Complaint.  (FAC.)  The Amended Complaint, however, did not cure the deficiencies of the original complaint; nor does Hunter Bags explain how further amendment will do so.  Indeed, the Amended Complaint added only a

---

[2] In any event, this theory of recovery likely fails as a matter of law.  *See Hudson & Broad, Inc. v. J.C. Penney Corp., Inc.*, 553 F. App'x 37, 42 (2d Cir. 2014) (summary order) (collecting cases) (concluding that, because the plaintiff "performed design work in anticipation of a contract for the manufacture of goods that never came to fruition," it "could have no reasonable expectation of payment for the services it provided," and therefore could not stake an unjust enrichment claim on that basis).

single additional paragraph to the original complaint: the broadly phrased description of Hunter Bags' trade secrets.  (Mem. at 10.)

"Generally, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend." *Turnipseed v. Simply Orange Juice Co.*, No. 20-CV-8677, 2022 WL 657413, at \*8 (S.D.N.Y. Mar. 4, 2022) (collecting cases); *see also TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if it fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint."). Because the Court concludes that further amendment would be futile, Hunter Bags' request for a second leave to amend is denied.

## V.    Conclusion

For the foregoing reasons, Spray Moret's motion to dismiss Hunter Bags' Amended Complaint is GRANTED.

The Clerk of Court is directed to close the motion at Docket Number 15, enter judgment of dismissal, and close this case.

SO ORDERED.

Dated: February 26, 2026
       New York, New York

_____
J. PAUL OETKEN
United States District Judge

11